buckets." In the plaintiff's patent this drying screen is placed immediately in front of the washers, whereas in the prior machines referred to it was placed further in advance,—nearer to the elevator. But, whether in the one place or the other, the screen performs the same function with equal efficiency. Certainly the change made by the plaintiff in the position of the screen, even if it secured a better result, was a matter simply of good judgment, not involving invention; but, in fact, the change was of no advantage.

Let a decree be drawn dismissing the bill, with costs.

BUFFINGTON, District Judge, concurs.

---

PALMER et al. v. McDERMAID.

(Circuit Court of Appeals, Seventh Circuit. February 11, 1893.)

No. 59.

PATENTS FOR INVENTIONS—NOVELTY—CHURNS.

Letters patent No. 378,144, issued February 21, 1888, and Nos. 418,355 and 518,356, issued December 31, 1889, to Samuel D. Palmer, for devices for securing the lid of end over end revolving barrel churns, consisting of the combination, with a churn having bails, of a removable head, and a cam to engage the free portion of the bails, and means for operating the cam, are void for want of novelty, having been anticipated by letters patent issued July 5, 1881, to William Dobson.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

In Equity. Suit by Henry H. Palmer, George E. King, and Samuel D. Palmer against John McDermaid to restrain the alleged infringement of certain patents. Defendant obtained a decree. Complainants appeal.

The following opinion was delivered in the circuit court, May 2, 1892, by Judge BLODGETT:

"In this case defendant is charged with the infringement of patent No. 378,144, granted February 21, 1888, to Samuel D. Palmer, for a 'churn,' and patents Nos. 418,355 and 518,356, granted December 31, 1889, to Samuel D. Palmer, for a 'churn.' All these patents relate to devices for securing the lid of end over end revolving barrel churns. Patent No. 378,144 shows a ring head, preferably of metal, inserted in the croze or open end of the churn, and extending inwardly, say a couple of inches, more or less,—enough to form a seat for the lid. On this ring head are four uprising ears, to which two bails are pivoted in such a way that these bails may be used to handle the churn, and are also adapted to be used as levers to press upon the lid, and hold it closely upon its seating on the ring head, so as to close the churn; these bails acting as levers, and when turned inwardly, towards the center of the lid, are fastened so as to hold the lid firmly in place. Infringement is charged of the first claim of this patent, which is: '(1) The combination, with a churn having bails pivoted thereto, of a removable head, and a cam secured to the said head to engage the free portions of the bails, substantially as set forth.' Patent No. 418,355 is, in its general characteristics, as the preceding one, except that it shows the ears attached to the body of the churn, outside of the ring head, and a device for locking the bails in place after they have been turned over the lid to act as levers to hold it closed; and infringement is charged of the second claim of this patent, which is: '(2) The combination of a churn body having a pair of bails pivoted thereto, a ring head, a removable head, a cam secured to the removable head to engage the free por-

tion of the bails, and means for operating the cam, substantially as set forth.' Patent No. 418,356 shows a churn in which the staves of the open end are cut off square, or at right angles with lengthwise axis of the churn; a removable lid, mainly of wood, encircled with the metallic ring surrounding its periphery and a portion of its top; a portion of the outer periphery of the under side of the lid cut away, and filled with cork packing; ears fastened to the body of the churn, with the lower parts of such ears so twisted as to conform to the body of the churn, and the upper part so twisted as to bring the holes of the bail in line with the bail, or in a chord across the periphery of the lid; bails adapted to act as levers to hold the lid in the closed position; a bolt passing up through the center of the lid, on which a cam turns to lock the bails, when it is desired to do so, for the purpose of holding the lid firmly in place. Infringement is charged of the third, fourth, fifth, sixth, seventh, eighth, and ninth claims of this patent, which are: '(3) The combination of a removable head, a churn body, two pairs of ears secured to the churn body, and provided with bail holes, arranged at an oblique angle to the base portion of the ears, and a pair of bails pivoted to the upper portion of the ears, and engaging the removable head, substantially as set forth. (4) The combination of a removable head, a churn body, two pairs of ears secured to the churn body, the upper portion of the ears formed at an angle to the base portion, and a pair of bails pivoted to said upper portion, and engaging the removable head, thereby holding it in position, substantially as set forth. (5) The combination of a removable head, a churn body, two pairs of ears secured to the churn body, the upper portion of the ears formed at an angle to the base portion, a pair of bails pivoted to the said upper portion, and engaging the removable head, and a fastening for the bails, substantially as set forth. (6) The combination of a removable head, a fastening on the removable head, a churn body, two pairs of ears, each ear being secured to the churn body by a fastening passing radially through the churn body and ear, the upper portion of the ears formed at an angle to the base portion, and a pair of bails pivoted to said upper portion, and engaging the fastening, thereby holding the removable head in position, substantially as set forth. (7) The combination of a churn body, a pair of bails pivoted thereto, a removable head, and a cam secured to the removable head to engage the free portion of the bails, substantially as set forth. (8) The combination of a churn body, two pairs of ears secured thereto, a pair of bails pivoted to the ears, a removable head, a cam located on a removable head to engage the free portion of the bails, and means for operating the cam, substantially as set forth. (9) The combination of a churn body, a pair of bails pivoted thereto, a removable head, a cam located on the removable head to engage the free portion of the bails, said cam being provided with a lever projection or projections to form means for operating the cam, substantially as set forth.'

"The defenses of noninfringement and want of patentable novelty were both relied upon, but I care only to consider the latter.

"The patent of July 5, 1881, to William Dobson, which is in evidence, shows all the features of the complainants' patent 378,144. We there see the ring head with the four ears, the two bails swinging in these ears, and so arranged as to act as levers to hold the lid in place when the churn is closed, and a rotating cam in the center of the lid to engage with these bails to press or hold the lid firmly in place. Patent No. 418,355 does not differ from the Dobson device in any essential particular, except that the ears are to be fastened to the body of the churn, instead of the ring head, and minute directions are given for making a cam fastener to hold the bails in place when they act as levers to fasten down the lid. And I say, unhesitatingly, that these features do not rise to the dignity of invention, but involve the simplest order of mechanical skill. If, for any reason, it was deemed desirable to put the ears on the body of the churn, instead of the ring head, any mechanic could have done so.

"The same may be said of patent No. 418,356, which is but a reproduction of the Dobson patent and of complainants' patent 418,355, so far as ears, bails, and cams are concerned; and there was surely no inventive ability required to cut the open end of the churn off square, and fit the lid upon it,

using the Dobson bails to hold it in place, and the cork packing to make a tight joint. The cam of this patent is but a reproduction of the Dobson cam, so far as I can see from the drawings, except that the cam face may be a little more inclined,—a little more 'cammy,' if I may coin a word to describe the difference. But the question of too much cam, or whether any cam is necessary, depends largely upon the shape given the bails. If the arch of the bail is high, it is obvious that when it is placed in an inclined position, as it must be to lock the lid closely, the bail itself will furnish cam enough, so that a straight button might only be required to press home the lid. If the bail arch is low, then some cam shape should be given the button to secure the requisite amount of pressure to the lid.

"With all due respect to the patent office, I must say that it seems to me all these patents in suit, as well as others in this record, were very improvidently issued. They may cover improvements in this class of churns, but all improvements do not involve or imply invention. These patents are void for want of novelty, and the suit is dimissed for want of equity."

Banning & Banning & Payson, for appellants.
L. L. Morrison, for appellee.

Before GRESHAM and WOODS, Circuit Judges, and BUNN, District Judge.

PER CURIAM. The decree appealed from is affirmed upon the grounds stated in the opinion of the court below.

---

HOLLOWAY v. DOW et al.

(Circuit Court, D. Indiana. March 13, 1893.)

No. 8,497.

1. PATENTS FOR INVENTIONS—INFRINGEMENT—OFFSETTING LOG CARRIAGES.
   In letters patent No. 279,537, granted June 19, 1883, to Carter & Seeley, for an offsetting log carriage for sawmills, whose object was to prevent the cut surface of the log from coming in contact with the saw during the backward motion of the carriage, claims 1 and 2 were for a carrying frame, slightly narrower than the trucks on which it was mounted, and adapted to slide transversely on their axles, with a draft beam, to which was attached the mechanism for moving the carriage longitudinally towards the saw in the operation of cutting, such beam being adapted to have a slight longitudinal movement in relation to the carriage, and being so connected by links with the carrying frame that this motion would produce the transverse motion of the carrying frame on the axles. *Held*, that these claims are not infringed by a carriage in which the transverse motion is produced by the action of spiral cam plates carried by a swinging arm actuated by the rotation of the axles of the trucks.

2. SAME—ANTICIPATION.
   Claim 3 of this patent was as follows: "In a sawmill, the combination with a saw, a fixed track by the side of the saw, and a series of trucks, or their equivalent, adapted to move along said track, and occupying a fixed position transversely thereon, of a frame adapted to support a log mounted on said trucks, and adapted to have a transverse movement thereon." *Held*, that this was not anticipated by the Fox patent No. 271, reissue of No. 10,888 of 1854, or No. 60,648 of 1866, to Stearns, in both of which the offset was of the whole carriage by means of the leverage of grooved wheels, mounted obliquely, against the rails, neither being capable of such lateral motion except when the carriage was in motion longitudinally, especially as both machines were uncertain in their operation, and never came into general use.